Good morning, Council. We call our third case for the morning, number 20-60271, Cascade Capital Group, L.L.C. v. Landrum. Mr. Barnes, you're up for your opening. Well, good morning, gentlemen. Ladies, excuse me. Who is the gentleman that just appeared before? Sorry? Who was in your chair? Who was in your chair before? That was Will Janus, my associate. OK, but he's not on here. No, sir, he's not. OK, good. He was warm in the chair. Yes, sir. Will, as people my age... Well, that's OK. I'm just looking at the text. That's all right. You got your clocks running and you're up. Yes, sir. I represent David Landrum, who is one of the defendants in this case. We have filed our appeal based on a number of things, one of which not being allowed to participate at trial. And the second would be the joint serval liability that Judge Girola determined that was disproportionately applied to my client. I'm sure if you've read the pleadings, you can get... What is your strongest argument? I mean, it just you made... And got out of the case too early and got stuck with it. I mean, I don't see how you get out of that. Well, I guess the question I would ask of you, Judge Jolly, is what procedural mistake was made, given the fact that when the counterclaim... That was a procedural mistake, which you said. No, sir, we never settled. We admitted that the... Well, I said your admission, sorry. Yes, sir. We admitted that the note was owed when we filed our answer within a month of the amended complaint. You confessed the complaint. We confessed the complaint and admitted. We did not admit to the unliquidated damage. And then the judge entered an order, did he not? A judgment against you. Is that right? That was almost a year and a half later. Yes, sir. That was in February of 2000. February 6th of 2000, he finally entered an order. When he entered the order sustaining the motion for summary judgment, that the note was owed and the note was valid. So at that point in time, both litigants, Judge Jolly, were in equal position in that we were both deemed to owe the note, which was at the time approximately $951,000. That was all I admitted to. Because if you recall, Judge, shortly after I filed my answer, then Mr. Sharpe filed his counterclaim. You admitted to everything in the complaint. Yes, sir. I did. Yes, sir. I did. Except for the unliquidated damages, which are the attorney's fees, which have been assessed against us. I could not admit, though, Judge Jolly, to the fact of the counterclaim because at the time I filed my answer, the counterclaim had not been filed. Now, one of the things to think about, Judge Jolly, is that- But you were not a party to the counterclaim. Were you a party to the counterclaim? I was a party to the counterclaim, Your Honor, because when they filed it, I was a party to the lawsuit. They filed a counterclaim against Cascade and Calvert. But the relief sought in the counterclaim directly affected Mr. Landrum, as you can see by Judge Giroir's order, because- Well, I understand that. Yeah, I mean- Liability was so disproportionate. I understand that. But, I mean, it seems to me an all amount of timing. As I understood the case, you were completely out of the case. Judgment had been entered against you, and you had confessed everything that you owed to Cascade. Well, Judge, if I were out of the case, why did I go to eight conferences? I don't know. I don't know. Maybe there was a twist, Your Honor. They treated me as being out. In fact, Judge Jolly, I was not treated as being out until the order was rendered March 6th of 2000. Well, does it matter how you were treated? Well, it doesn't really matter what the document says and what you signed. My, is how you're treated, is more important than the document that you signed that confessed judgment. We didn't confess judgment against everything. We simply confessed that we owed a note. We did not confess to an attorney's fee, Judge Jolly, nor did we have confessed that the attorney owed a note. Wow. Did the note provide for- Hold on. All right, hold on. Hold him up just a second. All right. Mr. Barnes, let Judge Jolly get his question fully out, and then you answer it, and then we'll try to, so we can hear both of you. I'm not trying to hog your time. In fact, I will urge the court to give you all the time you need to make your argument. I'm just trying to understand what kind of argument that you actually have, and maybe I should just be quiet and let you make it. So, that's what I'll do. Oh, no, no, no. I just won't. No, I was just trying to clarify, so we hear each speaker separately, so we get both your question and his. Mr. Barnes, the only thing to me is the timing, right now, at this point. And that is, if you were completely out of the case, and judgment had been handed against you, then you were out of the case. And there was, I see, no basis for your getting back into the case once you had confessed judgment. Well, two parts of that, Judge, is that when I filed my answer, we simply admitted that we owed the $981,000. I did not admit to the unliquidated damages under Rule 54-D2. I understand that. I agree with that. If there were unliquidated damages, that you're entitled to a separate damage hearing on that. I can agree with that. Attorney's fees are generally not considered to be unliquidated damages. Did you say they're not considered to be unliquidated damages? That's what I said. I may have missed smoking, but that's what I said. Well, under Rule 54-D2, Your Honor, as I read the statute, as I read the law, they are absolutely unliquidated. And as I read the cases, they are absolutely unliquidated, and have to be proven by proof. And at the trial, when they submitted the legal fees, I requested Judge Girola to allow me to cross-examine Mr. Calvert, which was denied. So now, Your Honor, we're stuck with over $100,000 of legal fees and costs, when according to what you say, I was out of the case once I confessed, which was— No, no, whoa, whoa, whoa. Please don't say what I'm saying. I'm trying to—I'm expressing my understanding of the case. Yes, sir. You're the one that has the final word on it, and I'm asking, really. Well, Your Honor, evidently, Judge Girola did not treat me as being out of the case, because he ordered me, along with the federal magistrates, to go to eight separate conferences. He ordered me to participate in trial. When we had the pretrial conference on July 2, 2019, I was present. I was told to submit my witness list. I was told to submit my exhibit list, which I did. And then, when I showed up for the trial in September, when we were in the chambers, was the very first time that Judge Girola told me that I would not participate. No order was issued telling me I would not participate until March the 6th of 2000. Okay, let me ask you this—this question. If you had confessed to judgment, and on what basis were you entitled to participate? Well, because the counterclaim now was throwing a different light on things, because it was now asking for a disproportionate allocation of the amount of the note, and exactly what happened was what I feared would happen, in that my client, who was jointly several and liable on a note, is now being charged with over a million dollars of cost of prosecutor's fees, whereas the other three joint and several finders are only paying $425,000 worth of nothing. At that point in time, Your Honor, I was still due to be a part. And so I had the right, I think, to come in and litigate the issue as to whether or not my client should be held to a different standard than the other three makers. I mean, I agree that, you know, you can state a case of unfairness, but it does look like to me that you're hoisted on your own petard. I mean, if you hadn't settled the case, if you hadn't confessed judgment and allowed a judgment to be entered against you in favor of the defender, once that's done, I don't see how you can claim to have a right to participate in it, other than equitable. I don't know what, I mean, what, I mean, there were fairly, you know, you, well, let me ask you the question of the counterclaims. Were you aware of the counterclaims at the time that you confessed judgment? No, sir. Okay. If you'll notice, They were not in the case at that time? No, if you'll notice, Your Honor, the answer and the counterclaim were filed the same day that I filed my answer. So I did not have notice of that until later. But at the time, I was still a party. So they were both filed, they were filed at the due date of the filing of the return of the answer rather. That still doesn't answer the question. At the time, at the time that you, at the time that you confessed judgment, had the counterclaims been filed? No. I did not know of the counterclaim until after I filed my answer. I'm not, I'm not asking whether you knew of them or not, but had they been filed? Were they a part of the record? My understanding is that they were both filed at the same time on the same day. That your answer, your confession of judgment was filed at the same time that they filed counterclaims? According to the docket, my answer was filed January the 19th of 2018. Their answer and counterclaim, I believe, was filed the same day. Okay, did you ask for any relief at that time? Didn't think I had to. Okay, did you, did you seek to answer or say anything about the counterclaims? Did you join the counterclaims? No, sir, I did not because I did not think the counterclaim was warranted. I did not think the counterclaim was right. I still don't think the counterclaim is right. And I don't believe what happened. But the judge thought the counterclaim was right. Yes, sir, that's the reason we got disappeared. It seems to me you're almost just confessed. I didn't think they were right. I wasn't going to be a part of it. Well, I didn't. So the question is, Judge, To me, you don't get the benefit of the judge's ruling on the counterclaims. Well, if in fact, Judge Girola, in his opinion, said that he was applying rules of equity, and I think everybody agrees on the law of Mississippi, the promissory note that was signed in April of 2014 was joint and several. How do you treat one of the signers differently than you treat the other three if equity is to apply? How do you do that? Because it's a joint and several obligation. How does he do that? I understand. I mean, it just looks like to me that there was a slip up. I mean, you clearly should not have confessed judgment at that time. Your timing of confessing judgment and the fact that you confess judgment and the rest of them continue to fight makes a difference in the case. It has to make a difference. Well, Judge, how was I supposed to answer if I'm going to answer truthfully? I don't know. Am I supposed to? Well, no, that's the point. I answered that we believe that the suit was correct. I never agreed to the counterclaim, nor did I agree that the joint and several liability of this note should be treated differently. That's not equitable, Judge. That's totally unethical. Well, I mean, I can understand. I surely understand how you feel about it, but it seems to me that, as I say, you were hoisted on your own card. Well, let me ask you this, Judge. How was I supposed to answer? Because if I'd done what you're telling me to do, I would have answered. Mr. Barnes, slow down. Yes, sir. Let's stay in sequence. You got two minutes and 45 seconds to make your argument or answer questions from the court, but you don't have any time to ask the court any questions. Yes, sir. Make your argument, answer the questions, and this will all go well. Well, I sympathize with Mr. Barnes because I'm pressing him a little bit here, and I'll just turn it over to somebody else to ask the questions. No, oral argument is to help us understand what all occurred. We read the record and all that, and that's the whole point of oral argument, to get answers to the questions. And so the questions are well taken, stripped to the chase. And so I'm only putting this in order. You know, answer the questions as best you can, but don't turn around and start asking questions. That part gets us out of congruence. So, you know, proceed and press ahead. Madam Clerk, give Mr. Barnes an additional two minutes on the clock. Do a reset, Mr. Barnes, and make your best arguments. Well, two or three things I want to say, Judge Stewart, is that at the time that I answered the complaint, I did so truthfully. I went over each and every question with my client, asked if in fact what was stated was correct, and we all agreed that it was. Now, I think Judge Jolly takes the position that since I answered truthfully, I can no longer contest any other issue that may come against my client, one of which is the extraordinary legal fees that have been attested against him. And secondly, the disproportionate allocation of the note where my client is stuck with in excess of $1.2 million of amount of money that's owed plus interest in payment, plus interest in attorney's fees. The other side is struck with $424,000, which is the original amount of note the bank lost. And so if in fact Judge Girola says that he is resorting to equity, then equity should demand that it be applied equitable to all four of the joint signers. My client would have never signed an almost $1 million note without the joint liability of the signers. One of them, Mr. Sharpe, who had been his business partner for the prior seven years. And now, Mr. Landrum, because he's answered the complaint truthfully, is being treated totally and completely unequitably by the court. I don't think that's what the law is. And I don't think there's any question that in Mississippi, the note that you have that's dated back in April of 2014, is in fact a joint servile obligation. Each party- Mr. Barnes, you keep arguing unfairness and treatment. You're not making some argument that Judge Girola has some animus that is informing all this, are you? No, sir, I'm not. I'm saying to you, though, if he's invoking rules of equity, it must be equitable to all. Under Judge Girola's viewing, the only people that were taken advantage of by Cascade and Mr. Albert were Mr. Sharpe, Littleton, and Chestnut. So does that mean that any sort of perceived lack of loyalty or breach of fiduciary duties would not occur to Mr. Landrum, simply because he agreed that the amount was owed? How did- I think that totally flies in the face of this terrible liability on a counter-story note. And I had provided the court with cases that showed the way this note was signed, it's joint and servile. And the thing about it is, Judge, I was not advised that I could not participate in this case until the morning of the trial. We had a pre-trial conference on July the 2nd, 2019. Before Judge Girola, I'd had two other pre-trial conferences before federal magistrates. No one has ever mentioned, not a party, not a judge, not a magistrate or anybody, that I was no longer a party, simply because I had entered the complaint truthfully and admitted the amount was owed. So I don't- I don't know what else I can do other than answer the complaint untruthfully so that I can stay involved in the case. But once the counterclaim was found, Mr. Landrum had a very direct interest in what was going to happen in the counterclaim. Did you join the counterclaim? No, sir. I didn't think the counterclaim was right. Okay. So why should you get any benefit of it? Because I'm now being burdened with the entire liability. Well, I understand that. But that was the choice that you made by not joining the counterclaim. Well, that's fine, Your Honor. So from a legal position, maybe I made a mistake. But you see, you're not applying legal things to this, Judge Jolly. You're applying equity. And if you're going to do equity for three, you've got to do equity for four. You cannot just sort it out. I don't think equity does not say that you are entitled to get out of a judgment. I mean, a confession of judgment that you made. I just don't... What kind of equitable principles are involved in this? It's as if you had never signed. I quite agree with you. If you had never confessed judgment, the judgment would have been entered against you. And you joined the counterclaim and were entitled to benefit. Clearly, they would have had to treat you fairly under those circumstances. But equity treats people who are under the same circumstances in equal results. But you were not in the same circumstances. You were over here on one side, standing by yourself, as you say, because you thought it was right. You were standing on principle, and I congratulate you for that. But then the other side decides they're not going to stand with you. They go and take a chance and sue on their counterclaims, and they win. Now, equity does not demand that they now share with you what they won when you declined to join them. Now, judging February the 6th, excuse me, February the 4th, 2019, Judge Garola issued his order, finding the note was valid as to all parties. He dismissed a number of the counterclaim charges. The only thing he left was the breach of fiduciary duty. So Judge Ascob, February the 4th, 2019, both parties were in the same position. Judge ruled that the note was, in fact, valid for the full $951,000. So at that point, Judge, whether they confessed it or not, we're both in the same position. All right, I'm going to stop you there, Mr. Barnes, on your initial argument. But you've reserved five minutes of rebuttal time to come back and pick up your argument or respond to anything. Let's hear from Ms. Burns, and then we'll be back to you on rebuttal. Thank you, Your Honor. My name is Shelly Burns. I represent Cascade Capital Group, LLC. And to answer a couple of questions that were posed to Mr. Barnes, the amended complaint filed by Cascade in December of 2017, in fact, did allege unliquidated damages, at least in part. And those, for present purposes, included, quote-unquote, lender expenses incurred in association with administration of the loan and protection of the security interest. Those allegations were admitted entirely in the answer without equivocation. Also, the fact that the note and indebtedness was joint and several in nature was admitted without equivocation by Mr. Landrieu. Now, the counterclaim was indeed filed on the same date as the answer. However, the original counterclaim was also dismissed for failure to state it with reasonable particularity, or state them, I should say. There were multiple. The counterclaim at issue was not actually filed until August 14, months later, because the co-defendants were given an opportunity to amend. With that counterclaim for breach of fiduciary duty, those co-defendants presented an affirmative defense for the same. They were mirror images, one being an affirmative defense, one being a request for affirmative relief. But in substance, they were identical, being a claim for breach of fiduciary duty. Now, Cascade sought summary judgment, and the result was recognition that the underlying contracts were promulgation valid. Enforceable. And that they had been breached. But Cascade was granted no relief, and there was no judgment entered as a result, because the district court expressed some reservations about potential lingering genuine issues of material fact. One being when the co-defendants had noticed of the injury. At the same time, the district court granted Cascade's motion for judgment on the claims as to Landrum. Now, that judgment was not a final judgment per Rule 54B standards. There was no final judgment as to Landrum until March of the next year, with the trial having occurred in the interim. During those months, Cascade's breach of fiduciary, excuse me, Cascade's breach of contract claim, the underlying claim, the claim that was interlocking, if you will, with this breach of fiduciary counterclaim and the affirmative defense that mirrored it, that both arose from a defensive posture. The breach of contract claim remained pending, and it remained viable, and it remained unresolved, and it was never addressed in any final fashion that would have been appealable or collectible by any party until March of the next year. During that interim, I think Landrum probably was a party to the breach of contract claim, with no final judgment having ever been entered. Whoa, whoa, whoa. I mean, the final judgment is true. No final judgment with respect to the case had been entered, but the final judgment can be entered with respect to an individual party long before the final judgment that makes the entire case appeal. So the judgment against Landrum, one would think, based on the knowledge that I have now, which may not be correct, was final once the judgment, once he confessed judgment, and the court entered a judgment in favor of Cascade against Landrum. That judgment was final as to Landrum and Cascade. But now, then the final judgment ultimately, the 54B provisions that allow interim judgments and so on and appeals and so on is not really at issue here. I mean, maybe you tell me if I'm wrong. I mean, maybe I'm misunderstanding because you know more about the case than I do. Okay. On February 4th of 2019, the district court entered an order granting Cascade's motion for judgment on the pleadings. Notably, that order confirmed that it was a joint and several indebtedness. But that order did not include language that suggested that it was intended to be final. Which I understand is technically not a mechanical requirement. And it, in theory, might have qualified without it. But that judgment indicated nothing in terms of the amount of damages that were actually due. And those damages were not a fixed sum. There was principle. There was interest. And there were compensatory damages. This case is really confusing to some extent. And your arguments in this case have kind of left me a bit confused. Because I'm not quite sure what you are arguing about. Are you arguing that Mr. Harris is correct in his statement that there was no judgment in and against him that precluded his participating in the case? What are you saying? I couldn't quite get the point of your argument. I believe you may be correct about the fact that Mr. Landrum continued to be a party. Because the bridge contract claim remained pending and unresolved. And the affirmative defense did as well. That said, I do not agree. And we do not concede that the manner in which he suggests the final judgment in the next year is flawed, is correct. Upon what basis do you say that you think that Mr. Landrum was still a party long after he had confessed judgment? What basis leads you to say that? The absence of a final judgment that qualified under Rule 54. And the absence of any request for that, as well as any apparent intent, until September of that year, during the trial. How does that affect the judgment that was entered against one party earlier? I mean, I can understand how, in other words, the case had several parties in it. It had one appealable judgment. Judgment would not be appealable until a final judgment was entered into the entire case. But a separate judgment had been entered against Mr. Barnes at that time. Now, I don't know when all the final judgment was entered. But I don't see how that affects the issue that is in this case. We still have another case on the docket today that involves a lot of the same facts. I'm confused about who is on whose side. And let me explain why I think it's significant. One, I do not agree with Mr. Barnes that Mr. Landrum was prejudiced, necessarily, as a result of the district court's actions. Well, I would like to know this from Mr. Barnes as well. On procedural and on factual review of Judge Girola's opinion, are there mistakes, specific mistakes, that he made as a matter of fact? I understand the arguments that you make with respect to the legal mistakes he made. But where are the factual errors that he made that would change the result of this case? Would change the result of his opinion, his order? The amount, for one. But ultimately, I think the questions are legal in nature, not factual. What amount did he make a factual error? Not a legal error, but a factual error. I'm not sure that it is factual. Okay, so... And let me explain what I'm referring to. In the complaint... I guess your argument is that there was no breach of fiduciary relationship that would have caused the judge to reduce the indebtedness to the extent that he did. And that what you would like to have is for all of the defendants to pay the same amount that Mr. Barnes is paying. That's what you want, isn't it? That's not this case. No, that is not exactly what we're asking. And that may not be the case. What are you asking? What is the outcome you would like with this appeal? Substantive Mississippi law, specifically principles of contract interpretation, ultimately decide this case. And equity is the problem. What's the bottom line? I mean, you're taking a meandering way to get to something. But what is the bottom line? Are you arguing in the red briefing today that we affirmed the district court in this judgment? Or have you changed your position in some way? It really is hard to figure out what you're arguing. The problem is that the district court did not act out of animus. But the district court does appear to have acted out of undue affinity, if you will, for applying equity, despite contrary substantive law. In other words, you're claiming he was not equitable to you because he canceled the debt to everyone else except to Mr. Barnes. And Mr. Barnes is arguing that he was inequitable because he didn't give Mr. Barnes' client the benefit of the breach of fiduciary duty. So I'm sorry. For contrary reasons, as a matter of fact. The argument is not, I'm not proposing that equity applies at all. Beg pardon? Our argument is that there should have been no apportionment based on any equitable principles. Reason being, this is a contract with clear and unambiguous intentions and expectations laid out in it with regard to principle and damages liquidated as well as unliquidated. So your argument is, are you saying that equity demands that the other three defendants in this case join in the liability with Mr. Barnes' client? And that is equitable if everybody is held to the same principle. He wants out on the basis of the district court's judgment saying that he is not obligated. You say equity demands that not only he be held liable, but all the other three parties be held liable. So I mean, I don't. Equity is irrelevant, is the argument. This is the contract and it should be, the decisions as to all, frankly, should be based on contract principles. Well, let me ask you, let me ask you this way. Oh, you're the appellee, what is the holding you're seeking from this panel? We're seeking reversal and for this court to engage in a de novo review of the two final judgments in combination with... Well, I must have read the wrong set of briefs because I sure don't remember that. That's in your other set of briefs. That's what you want in the other set of briefs, I thought. That's the ultimate goal. That's not this case. The damages that were shown at trial were $1,852,000. That was by testimony and documentary evidence presented by Cascade. And that is the aspect that Mr. Landrum arguably should have been able to participate in at a time. That is the amount that Cascade is owed in total or was owed at that time. And every defendant, Landrum included, agreed to repay that. Let me tell you what the pleadings and what this case I thought was about is that Mr. Landrum is very unhappy about the fact that he got stuck with the principal amount of the damages and did not enjoy the benefits that were achieved by the other three defendants that stayed in the case who had counterclaims that rewarded them. All right. That's what he is unhappy about. In this case, this appeal, and it has nothing to do with the merits of the judgment against Cascade, as I understand it, except he wants the benefit of that judgment. He's not attacking the judgment against the district court that held Cascade liable for a breach of fiduciary duty. What Mr. Lawrence is unhappy about is that he didn't get the benefit of it. And he didn't have the right to participate in the trial and that he is being hung out to dry while the other three abogors on the note have gotten the benefit of a counterclaim. Isn't that right? I agree. Okay. So this has nothing to do with the merits of Judge Barola's opinion on finding a conflict of interest that resulted in the reduction of the indebtedness. This doesn't have anything to do with that, as I understand it, this appeal. Well, I agree. Mr. Landrum did not raise a counterclaim. He did not join a counterclaim. He did not raise a cross-claim as to any respective responsibility. Do you agree he is not entitled to any benefit of the cross of the counterclaim? Absolutely, yes. Okay. And here's why. This was a joint and several debt liability. He agreed to that. When the amended complaint was filed, there was a specific demand. The indebtedness at that time was $1,300,000 and change. He admitted to owing at least that much unequivocally. I mean, I agree. Nobody disagrees with that. The argument here is that the judge granted the counterclaim that reduced that judgment. Everybody agrees. We agreed to this much. We agreed we had this indebtedness and so on. But then they attack that indebtedness on the basis of a conflict of interest of the lender. And here's why that is. Judgment. He had left the case a long time ago and was not involved in it when this judgment came down. It did not participate in the counterclaims. Here's why it matters for present purposes. What matters? Landrum admitted that he owed $1,300,000 when he filed the answer with no affirmative defense, no counterclaim. He didn't join one. He wasn't named in one. When the final judgment was ultimately entered, it was for less. He argues he was entitled to participate in the trial. Do you agree with him? At a minimum, he was probably entitled to cross-examine Cascade relative to the unliquidated damages portion of the indebtedness. So y'all on the same side? I mean, do we have... Oh, no. I can't figure it out. I'm sorry. Go ahead. Our difference is with the request that Landrum be afforded any benefit from the breach of fiduciary claim or affirmative defense because he did not join them. If he ever could have raised them, he waived them. And yet he's requesting some benefit from that now in the form of apportionment and allocation. He is not entitled to that. He was never entitled to that, I don't believe. Affording him that would seem to be the epitome of inequitable. However, the issue that we have is that the district court has already applied equity and already apportioned the damages in a way that is prejudicial to us, not him. He wasn't prejudiced. We were. But you're here as the appellee in the appeal. You know, ordinarily, the appellee is arguing to us to sustain the judgment from below. It's a rarer case where the appellee is not urging that first and foremost, but is also making some kind of subliminal claim about the way it was done below. And so I just have to tell you, for one, it's not clear to me how what you said here squares with what's in the red brief. But maybe it is. So, you know, it's not. I asked you before, what is the holding? You as the appellee are seeking from the panel. And I'm still not sure because then you started explaining back about equity. So I'll ask you one last time. You're on a zero clock and we'll be back to Mr. Barnes for rebuttal. So what is the holding you're seeking from this panel? Is it now that you've looked at it that we ought to just remand this back down below and let you all figure it out once and for all? Or are you asking us to swim through equity and figure out stuff that's not argued to us? What is your bottom? What is your bottom line? We know what Mr. Barnes is arguing. What is your bottom line on this appeal? We would like for a final judgment to be entered that recognizes the entirety of the indebtedness that his client admitted owing. Mr. Barnes is. Anyway, okay. So that sounds like something contrary to us affirming the judgment that's on appeal to us in this suit number. If nothing else, we certainly do not want Mr. Landrum to be afforded the benefit of apportionment further. That would only exacerbate the problem because he was not entitled to that. All right, I'm gonna cut you off there because I don't think this is gonna get any clearer. So I'm gonna cut you off at the zero o'clock. We're gonna go back to Mr. Barnes and I'm gonna hold you, Mr. Barnes, to exactly the five minutes of rebuttal and then we're gonna cut this one off. Judge, I think I've pretty much spent the time arguing with Judge Jolly. I still believe that to hold this here, to hold this opinion as it is now, lies in the face of joint and several liability. Because what you're doing now is you're not having joint and several liability. You're having single liability from Mr. Landrum. Well, I'm gonna cut to the chase and ask you the same thing, not re-urging what's before. What are you seeking on appeal? You want us to just reverse the trial court and send y'all back to square one? What is it you're seeking? Don't remake the arguments about equity and this and that and all that. We've got a non-oily argued case companion right behind this one. Same cascade, same party. And all this is just blurred in this argument between which of the arguments made in that case versus the ones here. And frankly, you all haven't helped at all to clarify any of it. You really haven't. Oral argument is typically to help the panel. You're getting all the questions because it hadn't helped. It has confused the matters profusely. Now, we get paid to figure it out and we're gonna figure it out. But the oral argument hadn't helped. Mr. Barnes is animated viscerally about unfair treatment. Yet he has no claim about the trial judge. Counsel for the appellee is empathizing with part of what's said, but won't give a bottom line on what cascade wants from this court. We all do our job, but what we render may or may not be. So I've asked you four times to get there. So Mr. Barnes, I'll ask you straight up without re-urging, what is it you want? I mean, we have a view coming in on whether you were in the case or not. Is remanded it back to the district court for y'all to say all this to Judge Garola? Is that your bottom line here or what? Yes, I want it reversed and remanded for a new trial. So that I can participate, so that I can put forth my witnesses as I was told that I was going to do. So that I can show that the claim of the counterclaim is bogus because what it did is prove 70% of the liability on my client because he answered truthfully. You've asked, Judge Jolly said, what factual mistakes? He asked of Mrs. Barnes, what factual mistakes were made? The factual mistakes occurred in Judge Garola's interpretation of what happened at the end of 2014 and the first part of 2000, excuse me, end of 2013, the first part of 2014. Judge Garola accepted Mr. Goldenbacher's testimony at face value that, quote, had I known about this, I would have gone out and found a loan at a 4.5% interest rate, but I didn't know this was going on. Mr. Goldenbacher knew everything that was going on. Under the joint venture agreement accepted in 2010, Mr. Goldenbacher was charged with securing all the financial for the Livingston project. From 2010 until today, he has not secured the first dime. Mr. Goldenbacher sat back and hoped that this property would go into foreclosure so that he could buy the cottage's property for pennies on the dime. Only reason that did not happen is that Mr. Calvert came in and bought a plus note. Otherwise, Mr. Goldenbacher, who was charged with raising money and finding the financing, did absolutely nothing. So the only two people that were loyal in this were Calvert and Landry. The other party, Sharp and Goldenbacher, did nothing but wait for this property to be closed. What you need to understand, Judge Stewart, is that the bank plus note collateralized a major piece of property on this development, a property known as a cottage. If everybody agreed that the cottage was built and built out, it would pay off all the debt and everybody could go home. Cottages, since 2014, have killed my house. And I'm just going to say factually, had I been representing Mr. Calvert, I would have never given this group a two-year term to get it figured out and then give them another year of forbearance. You have three years where Mr. Calvert did not press to get paid. Not as strong as he could have, where his lawyer, I'd have done a six-month note, foreclosed it, and then I would have owned the cottage's property. What Mr. Goldenbacher was trying to do was to acquire all of the property for himself and for his development. He already had a major piece. This was the last piece of the puzzle, and the only reason he didn't get it was because Mr. Calvert stopped him. So factually, Judge Garola gave all the impetus to Mr. Goldenbacher and none to Mr. Calvert, and that was just factually incorrect. And that's what the proof showed. All right. All right, counsel. We've exhausted your arguments. We've got the briefs in both the cases. We'll do what we get paid to do. We'll figure it out. With that, you are excused with the thanks of the court. Thank you, sir. Thank you.